IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CYNTHIA ROBERTS, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>HEWLETT PACKARD COMPUTING & )<br>PRINTING, INC., *et al.*, )<br>)<br>    Defendants. ) | Civil Action No. 1:20-cv-822 (RDA/MSN) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Hewlett Packard Computing & Printing Inc.'s and Hewlett Packard Enterprise Services, LLC's (collectively, "Defendants") Motion to Disqualify Counsel ("Motion"). Dkt. 28. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). Considering the Motion (Dkt. 28), Defendants' Memorandum in Support (Dkt. 29), Plaintiff's Opposition (Dkt. 35), and Defendants' Reply (Dkt. 36), the Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

In this employment discrimination case, Plaintiff Cynthia Roberts ("Plaintiff") brings claims under Title VII of the Civil Rights Act of 1964. She is represented by the Reston, Virginia-based Charlson Bredehoft Cohen & Brown, P.C. firm ("Charlson Bredehoft"). Dkt. 1. Charlson Bredehoft has represented Plaintiff in her litigation against Hewlett Packard entities since she first brought an Equal Employment Opportunity Commission charge in 2015. Dkt. 35, 2-3.

Although Plaintiff was employed by Hewlett Packard Company, that corporation later went through several mergers and spin-offs. Dkt. 1 ¶ 2. The particular Hewlett Packard division that employed Plaintiff first became Enterprise Services, LLC, which was a wholly owned subsidiary

of DXC Technology Company. Dkt. 28, 2 n.2. Then, DXC Technology spun off Enterprise Services, LLC, and the entity became Perspecta Enterprise Solutions, LLC. *Id.* Plaintiff now works for Perspecta Enterprise Solutions, LLC in its Herndon, Virginia branch. *Id.* at 2. Perspecta has been sued by NikSoft Systems Corp. ("NikSoft") in a separate action pending in Fairfax County Circuit Court, *NikSoft Systems Corp. v. Jennifer Leise and Perspecta Enterprise Solutions, LLC*, Case No. 2019-15751. *See* Dkt. 28, 3. Perspecta's co-defendant in that case, Jennifer Leise, is also represented by the Charlson Bredehoft firm. *See id.* The plaintiff in that case pending in state court, NikSoft, alleges that Leise—a former NikSoft employee—violated her non-compete agreement when she accepted employment with Perspecta. *See id.*

After Plaintiff filed a complaint against Defendants in this Court on July 21, 2020, Defendants served their answer on September 18, 2020. Dkt Nos. 1; 13. On November 23, 2020, Magistrate Judge Michael Nachmanoff approved the parties' proposed discovery plan. Dkt. 20. After Plaintiff filed a Motion to Compel, Judge Nachmanoff held a hearing on December 27, 2020, at which time oral argument on the Motion to Compel was continued to January 15, 2021. Dkt. 27. Judge Nachmanoff also ordered the parties to submit a status report by January 13, 2021. *Id.* Then, on January 12, 2021, Defendants moved to disqualify Plaintiff's counsel. Dkt. 28. Plaintiff filed an opposition to the Motion on January 20, 2021, and Defendants replied the following day. Dkt Nos. 35; 36. All litigation deadlines have been stayed pending the Court's resolution of Defendants' Motion. Dkt. 43. On April 23, 2021, the Court ordered Plaintiff to produce a copy of a February 2020 Joint Defense Agreement for *in camera* inspection. Dkt. 41. Counsel for Plaintiff complied with that Order, the Court reviewed the agreement *in camera*, and this matter is now ripe for review.

## II. STANDARD OF REVIEW

Disqualification of counsel is justified when a conflict of interest is not just conjectural, but is actual or likely. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990). When a court considers whether to grant a motion to disqualify, it must first consider "the fundamental principle of a party's right to choose its counsel." *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 569 (E.D. Va. 2016). The court should next consider "the pivotal confidential relationship between a party and its attorney." *Id.* "Third, the court should satisfy itself that the potentially conflicted attorney's relevant cases are 'substantially related.'" *Id.* at 570; *see also Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010).

The party seeking to disqualify opposing counsel bears a "high standard of proof" to show that disqualification is warranted. *Tessier*, 731 F. Supp. at 729 (citing *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). Even so, the Fourth Circuit has held that "[i]n determining whether to disqualify counsel for conflict of interest, the trial court . . . with a view of preventing the appearance of impropriety, is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977). Although all doubts must be resolved in favor of disqualification, the Fourth Circuit has also made clear that "the drastic nature of disqualification requires that courts . . . always remain mindful of the . . . possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). In short, the evaluation of a disqualification motion requires balancing the client's free choice of counsel against the maintenance of the highest ethical and professional standards in the legal community. *See Tessier*, 731 F. Supp. at 729.

III. ANALYSIS

A. Conflict of Interest

The Court first must determine whether Charlson Bredehoft's representation of Plaintiff presents an actual or likely conflict of interest. Plaintiff has selected Charlson Bredehoft to represent her, and that choice is due considerable weight because the right to choose one's own counsel is a "fundamental principle" in our system. *Audio MPEG*, 219 F. Supp. 3d at 569. To be certain, "this right is secondary to the court's duty to maintain the integrity of the bar." *Id.* (citation omitted). That is why courts must consider the "pivotal confidential relationship between a party and [ ] [her] attorney[.]" *Id.* But before overturning a party's decision by disqualifying her chosen counsel, a court should be certain that "an attorney-client relationship has been established" in the relevant prior matter. *Tessier*, 731 F. Supp. at 731. If such a relationship has been established, the Court must give weight to the "irrebuttable presumption" that a conflict exists due to that relationship. *Id.*

Defendants argue that because Charlson Bredehoft represents Plaintiff in this case while also representing Jennifer Leise in the *NikSoft* case in Fairfax County Circuit Court, there is an actual conflict of interest under the Virginia Rules of Professional Conduct. *See* Dkt. 28, 1. In the alternative, Defendants urge that even if there is no actual conflict, "the appearance of impropriety is so strong as to warrant disqualification[.]" *Id.* The crux of Defendants' argument is this: Because Charlson Bredehoft's client in the *NikSoft* case, Jennifer Leise, entered a joint defense agreement with co-defendant Perspecta in a separate action pending in Fairfax County Circuit Court, the firm must be disqualified from representing Plaintiff in this case because Defendant Hewlett Packard Enterprises, LLC is the predecessor-in-interest to Perspecta. *Id.* at 3. In addition,

Defendants argue the two matters are "substantially related" and that failing to disqualify Charlson Bredehoft will severely prejudice Defendants. *Id.* at 8.

Plaintiff's principal response to Defendants' Motion is that there is no conflict because Charlson Bredehoft does not represent Perspecta in the *NikSoft* case in Fairfax County Circuit Court, and Plaintiff is not suing Perspecta in the action before this Court. Dkt. 35, 7. In support, Plaintiff cites the language of the joint defense agreement Defendants reference in the Motion. *See id.* What is more, Plaintiff argues that Defendants waived their rights to the relief they now seek by failing to bring their Motion in a timely manner, that the actions are not substantially related, and that the situation does not create a conflict or appearance of impropriety under the Virginia Rules of Professional Conduct. *See id.* at 7-19.

1. Actual or Likely Conflict

This Court finds there is no actual or likely conflict of interest. When a party enters a joint defense or common interest agreement, its own conflicts are not automatically imputed to its co-defendants. *See, e.g.*, *United States v. Stepney*, 246 F. Supp. 2d 1069, 1080 (N.D. Cal. 2003) ("Courts have consistently viewed the obligations created by joint defense agreements as distinct from those created by actual attorney-client relationships"); *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977). Critically, the Joint Defense Agreement relevant to this Motion expressly states that it does not create any attorney-client relationship or fiduciary duty. That agreement is clear: "nothing" in it "is intended to create any attorney-client relationship"; the agreement does not "affect the separate and independent representation by each

5

Party by its respective counsel"; and attorneys "shall not owe a duty of loyalty to any Party other than their own client[.]"[1]

Therefore, when Plaintiff's counsel entered into the Joint Defense Agreement with counsel for Perspecta in the *NikSoft* case, the firm did not absorb the conflicts of Littler Mendelson—the firm that actually represents Defendant Hewlett Packard Enterprises, LLC's predecessor-in-interest, Perspecta. Because the *NikSoft* litigation does not create an attorney-client relationship between Charlson Bredehoft and Perspecta, the Court finds no basis for disqualifying Charlson Bredehoft from representing Plaintiff in this matter.

2. Substantial Relatedness

Furthermore, the *NikSoft* litigation and this matter are not "substantially related." *See Audio MPEG*, 219 F. Supp. 3d at 570. Defendants acknowledge there is not a squarely opposed conflict while claiming "Plaintiff's Counsel is simultaneously defending and prosecuting against Perspecta." Dkt. 36, 3-4. That assertion strains credulity. In fact, Plaintiff's counsel, Charlson Bredehoft, is *not* defending Perspecta in the *NikSoft* matter—the firm represents Perspecta's co-defendant in that case, Ms. Leise. As this Court has clarified, the Joint Defense Agreement the parties entered in the *NikSoft* case does not create an attorney-client relationship between Charlson Bredehoft and Perspecta. This fact alone makes Defendants' claimed conflict unlike other conflict cases the Court has addressed. *See, e.g.*, *Audio MPEG*, 219 F. Supp. 3d at 574 ("As opposing Parties in this case, Plaintiffs and Dell have opposing interests"); *Reese v. Va. Int'l Terminals, Inc.*, 894 F. Supp. 2d 665, 672 (E.D. Va. 2012) (noting that the parties "are directly adverse in this federal lawsuit").

---

[1] The Joint Defense Agreement has been produced to the undersigned for *in camera* review pursuant to the Court's Order of April 23, 2021. *See* Dkt. 44.

Perhaps because they perceive this wrinkle in their argument, Defendants stress that their conflict claim is "is rooted in the *access* that said representation presents," Dkt. 36, 4, and urge the Court to disqualify Plaintiff's counsel because Charlson Bredehoft is a small law firm that has assigned at least four different associates to work on this case, meaning that "any attempted ethical walls would likely be ineffective." Dkt. 29, 9.  Notably, Defendants cite no opinion issued by this Court or any other court adopting a *per se* rule that an ethical wall erected by a small firm is likely ineffective.  *See id.*  Defendants do not argue—and the record does not suggest—that Plaintiff's counsel has violated the Joint Defense Agreement's term prohibiting the parties' exchange of any information or documents except those necessary to the *NikSoft* defense.  Because there are no specific allegations or evidence that opposing counsel has "obtained confidential information [in the *NikSoft* litigation] that would have been relevant" in this case, *Tessier*, 731 F. Supp. at 730, the suggested prospect of retained Charlson Bredehoft lawyers gaining improper access to confidential material remains speculative at best.  *Cf. Stepney*, 246 F. Supp. 2d at 1080 ("Courts have also consistently ruled that where an attorney represents a client whose interests diverge from a party with whom the attorney has previously participated in a joint defense agreement, no conflict of interest arises unless the attorney actually obtained relevant confidential information."); *Armco Steel Corp.*, 559 F.2d at 253 (5th Cir. 1977) (holding that counsel "should not be disqualified unless the trial court should determine that [he] was actually privy to confidential information").  The Court will not order disqualification on theoretical grounds.

Defendants offer no applicable case law that would command a contrary result.  In fact, in the only case Defendants cite involving a motion to disqualify based on a joint defense agreement—a Western District of Washington opinion—the Court did not disqualify counsel.  *See Avocent Redmond Corp. v. Rose Elecs., Inc.*, 516 F. Supp. 2d 1199, 1205 (W.D. Wash. 2007).  A

7

more direct conflict must be alleged before this Court will find that two matters are substantially related. In the only notable case potentially helpful to Movants, the attorney therein "took on a new client who was squarely opposed to an existing client in an ongoing matter." *Lyons v. City of Alexandria*, No. 1:19-cv-576, 2020 WL 2832492, at *4 (E.D. Va. Jan. 14, 2020). Recognizing that this client was "poised to be a key opposing witness in [Plaintiff's] case should she need to take the stand to defend the City's positions[,]" the Court ordered that counsel must be disqualified. *Id.* Here, by contrast, Defendants claim that both suits involve hiring practices for similar positions and that the factual issues and evidence in the two cases are similar. Dkt. 29, 7-8. Simply put, Defendants have not shown that the two matters are substantially related.

### 3. Appearance of Impropriety

Neither is there a risk that Charlson Bredehoft's continued representation of Plaintiff will create an appearance of impropriety under the applicable ethical rules.[2] Pursuant to Rule 1.7 of the Virginia Rules of Professional Conduct, a lawyer may not represent a client if the representation involves a concurrent conflict of interest, which exists when "the representation of one client will be directly adverse to another client" or if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person by a personal interest of the lawyer." Va. Sup. Ct. R. pt. 6, sec. II, 1.7(a); *see also Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 601 (E.D. Va. 2009). This case presents neither a directly adverse conflict nor a significant risk that counsel's representation of Plaintiff will be materially limited by the responsibilities Charlson

---

[2] With one exception for criminal cases not relevant here, the local rules of the Court provide that "the ethical standards relating to the practice of law in criminal cases in this Court shall be Section II of Part Six of the Rules of the Virginia Supreme Court." Loc. Civ. R. 57.4(I). That section of the Virginia Supreme Court Rules incorporates the Virginia Rules of Professional Conduct, and Rule 1.7 of those rules governs conflicts of interest.

Bredehoft owes to Ms. Leise in the *NikSoft* litigation.  Defendants raise a number of conjectural scenarios, arguing Plaintiff's counsel "*could* obtain information from the *NikSoft* action that is favorable to Plaintiff in the instant case," that he "*could* obtain information from the *NikSoft* matter that he would otherwise not have access to, and that he "*might* uncover information and/or documentation from the *NikSoft* matter that would foreclose Plaintiff's claims herein."  Dkt. 28, 8 (emphases added).  Even with these hypothetical settings, the commentary to Virginia Supreme Court Rule 1.7 makes clear that "[a] possible conflict does not itself preclude the representation" because under the ethical rules:

> [t]he critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Va. Sup. Ct. R. pt. 6, sec. II, 1.7(a), cmt. 8.

In this case, the likelihood of an actual conflict remains low.  As the Court has explained, Plaintiff's counsel does not represent any Defendant in this case, and there is no indication that Charlson Bredehoft has obtained information from the *NikSoft* litigation that would be prejudicial to Defendants.  And should a concurrent conflict of interest materialize at some later stage of litigation, the Court expects Plaintiff's counsel—as an officer of the Court—will continue to comply with the procedures outlined in Virginia Supreme Court Rule 1.7(b), which provides that client consent may be obtained to cure a concurrent conflict of interest.[3]

---

[3] Plaintiff's Opposition suggests that such consent has already been obtained by Plaintiff's counsel in this case, notwithstanding the fact that the Court finds no concurrent conflict of interest. *See* Dkt. 35, 18.

9

B. Delay and Waiver

Plaintiff also opposes Defendants' motion on the ground that their delay in bringing this Motion constitutes a waiver. Dkt. 35, 8-13. Because there is no actual or likely conflict of interest in this case, the Court need not resolve the Motion on grounds of undue delay.

\*\*\*

To be sure, the Court "'remain[s] mindful of the . . . possibility of misuse of disqualification motions for strategic reasons.'" *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, 436 F. Supp. 3d 870, 874 (E.D. Va. 2020) (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)). Although Defendants filed their Motion four days after oral argument on Plaintiff's Motion to Compel and one day before the parties were ordered to submit a joint status report and appear for a status hearing concerning any outstanding issues, the Court does not find that Defendants waived their disqualification arguments by undue delay or filed their Motion as a means to gain a strategic advantage. Dkt. 35, 8-13. Even so, litigants appearing before this Court are cautioned that motions brought for solely tactical reasons tax judicial resources and are ill-advised and not favored. When the parties resume discovery in short order, they should bear in mind that continuances or extensions are not granted in this District due to the "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery." Loc. Civ. R. 16(B).

IV. CONCLUSION

For these reasons, it is hereby ORDERED that Defendants' Motion (Dkt. 28) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
May 18, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

10